ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-165[1]

| CORPORACIÓN PRIMAS Y SEGUROS, INC.  Demandante-Apelante  v.  ASOCIACIÓN DE SUSCRIPCIÓN CONJUNTA DEL SEGURO OBLIGATORIO, INC., "ASC, INC." Y OTROS  Demandados-Apelados | KLAN202300775 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm.  SJ2021CV08457  Sala: 903  Sobre: Acción Civil y Daños |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Jueza Santiago Calderón y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de mayo de 2024.

Comparece Primas y Seguros, Inc. (en adelante, "PSI" o "parte apelante") para solicitarnos que se revise y revoque la *Sentencia* emitida el 20 de junio de 2023 y notificada el 22 de junio del mismo año por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la cual declaró *Ha Lugar* a la *Moción de Desestimación*, presentada el 16 de marzo de 2022 por la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, Inc., (en adelante, "ASC" o "parte apelada") y el 30 de marzo de 2022 por KPMG, LLC (en adelante, KPMG), respectivamente.

Examinada la solicitud de autos y la totalidad del expediente y a la luz del estado de derecho aplicable ante nuestra consideración, *confirmamos* la determinación del Tribunal de

---

[1] Mediante la Orden Administrativa OAT-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Eileen J. Barresi Ramos.

Primera Instancia que desestimó con perjuicio la causa de acción instada por PSI.

**I**

A continuación, resumimos los hechos pertinentes para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración.

El 24 de diciembre de 2021 PSI presentó su *"Demanda"*.[2] Luego de emplazadas la parte apelada y KPMG, el 16 de marzo de 2022, la ASC presentó una *"Moción de Desestimación"* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. R 10.2 (5).[3] El 30 de marzo de 2022, la co-demandada KPMG, presentó *"Moción de Desestimación"*.[4] En relación a la *Moción de Desestimación* presentada por ASC el 29 de abril de 2022, PSI presentó ante el Tribunal de Primera Instancia una "*Solicitud de Posposición a que se Considere la Solicitud de Desestimación hasta tanto Finalice el Descubrimiento de Prueba para que se Conozca la Verdad*".[5]

Entre los fundamentos para la *Moción de Desestimación* presentada por ASC, se encuentran que las controversias planteadas deberían ser desestimadas por las doctrinas de cosa juzgada o en su defecto, impedimento colateral por sentencia, basado en la *Sentencia* emitida por el tribunal en el caso *Primas y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio,* SJ2018CV02981.[6] En esencia, en el dictamen precitado, el Tribunal de Primera Instancia resolvió que:

---

[2] Exhibit 8 del recurso de Apelación, págs. 49-78.
[3] Exhibit 10 del recurso de Apelación, págs.79-111.
[4] Exhibit 11 del recurso de Apelación, págs. 112-143.
[5] *Íd.*
[6] En el 2018 PSI presentó el caso *Primas y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio,* **SJ2018CV02981**. El 21 de noviembre de 2018 el Tribunal de Primera Instancia denegó mediante *Resolución* una moción de sentencia sumaria presentada por ASC, donde ASC argumentó que el pleito de epígrafe constituía cosa juzgada por el pleito de clase *Drusila Morales de Loperena, et als. v. ASC, et als.,* K AC2001-7531. El Foro a *quo* razonó que en ese momento no se cumplían los requisitos de cosa juzgada, por lo que no procedía dicha defensa. Posteriormente, el 11 de marzo de 2019, este Tribunal tuvo ante sí el caso de *Prima y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio,*

[…]

En torno al marco estatutario bajo la Ley del Seguro de Responsabilidad Compulsorio, reiteramos que el Artículo 6(e) de la referida ley expresa que **las entidades autorizadas para el cobro del seguro de responsabilidad obligatorio retendrán el 5% del importe de las primas directamente cobradas y recaudadas por estas, para cada asegurador privado, y la Asociación de Suscripción Conjunta, por concepto del servicio de cobro de las primas**. Destacamos que las entidades autorizadas para el cobro del SRO son las colecturías, estaciones oficiales de inspección debidamente autorizadas, bancos, y cooperativas. 26 LPRA sec. 8052(g).[7]

[…]

De la *Moción de sentencia sumaria* presentada por la ASC, podemos colegir que es un hecho incontrovertido que el 12 de mayo de 1999, el Comisionado de Seguros le envió una carta al Lcdo. Pérez Graulau, Presidente de PSI. Tampoco hay controversia que en la referida carta el Comisionado le expresó que "somos de la opinión que un agente de seguros tendrá derecho a recibir comisión por la cubierta del SRO siempre que el asegurador que provea dicho seguro lo haya nombrado su agente, y el asegurado lo haya escogido como su intermediario en tal venta". No obstante, dada las circunstancias de que la carta es dirigida exclusivamente a PSI, y no es una opinión, carta normativa o resolución de la OCIF, conforme Regla 59.2 de Procedimiento Civil, se resuelve que dicha comunicación no tiene el efecto de crear una normativa o reglamentación en cuanto al trato de la controversia ante nos.[8]

Por otro lado, aun tomando la carta 12 de mayo de 1999 como una que crea obligaciones para la ASC o una determinación final de la OCIF, en relación con el derecho a favor de los agentes y corredores de seguros, es imprescindible mencionar que no hay controversia de que el Comisionado le exigió a PSI cumplir con unos requisitos antes de tener derecho a algún tipo de comisión. Tampoco albergamos duda de que PSI no cumplió con los requisitos esbozados en la referida carta al: (1) no tener un nombramiento de agente de seguros emitido por la ASC; ni (2) tiene nombramientos de producto por escrito por parte de los asegurados que supuestamente lo escogieron como intermediario para la tramitación del SRO. Por esta razón, se concluye

**KLCE201900021**, donde se denegó el auto de *Certiorari* incoado por la ASC para que revocara lo resuelto en la *Resolución y orden* previamente mencionada y emitida por el foro primario. Posteriormente, PSI presentó ante el Tribunal de Primera Instancia una solicitud de sentencia sumaria a su favor. La misma fue denegada por el foro primario, toda vez que incumplió con los requisitos de la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap.V. R36.3. Por su parte, ASC presentó una solicitud de sentencia sumaria que fue declara *Ha Lugar* por el Tribunal de Primera Instancia, donde desestimó con perjuicio la causa de acción incoada por PSI. Inconforme con dicha determinación, PSI acudió ante este Tribunal mediante el recurso **KLAN202000422,** el cual fue desestimado por falta de jurisdicción. Ulteriormente, PSI radicó un recurso de *Certiorari* ante el Tribunal Supremo de Puerto Rico, CC-2020-0590. Ante la denegatoria del recurso de *Certiorari* en el Tribunal Supremo de Puerto Rico, la *Sentencia* emitida por la Hon. Aileen Navas-Auger advino final y firme, por lo que constituyó la "ley del caso".

[7] Exhibit 6 y 7 del recurso de Apelación, págs. 43-66

[8] *Íd.*

que**, de haber existido algún derecho, producto de esta carta a favor de los agentes o corredores de seguros, no procedería el pago de comisiones a favor de PSI; ya que PSI no cumplió con ninguno de los requisitos exigidos por el Comisionado en la carta dirigida a éstos el 12 de mayo de 1999.**[9]

[...]

[...] Por ello, **resolvemos que, en virtud de la Ley del Seguro de Responsabilidad Obligatorio,** *supra,* **PSI no tiene derecho a cobrarle las comisiones reclamadas a la ASC.**[10]

El foro primario dictó *Sentencia* 20 de junio de 2023 y notificada el 22 de junio del mismo año. En la misma, el Foro a *quo* determinó que basado en el pleito anterior habido entre las partes, acogió las determinaciones de hecho del antedicho litigio SJ2018CV02981 y las hizo formar parte de su *Sentencia*. **En síntesis, tomando dichas determinaciones como la Ley del caso,**[11] **lo que procedía era desestimar con perjuicio la acción incoada por PSI**. El 7 de julio de 2023, la parte apelante presentó una *"Respetuosa Moción de Reconsideración a Sentencia"*.[12] El 20 de julio de 2023, KPMG, presentó *"Oposición a Moción de Reconsideración"*.[13] El 24 de julio de 2023, ASC presentó *"Oposición a Respetuosa Moción de Reconsideración a Sentencia"*.[14] El 31 de julio de 2023 el foro apelado dictó *Resolución* declarando *No Ha Lugar* a la *Reconsideración* presentada por PSI, la cual fue notificada el 4 de agosto de 2023.[15]

---

[9] *Íd.*

[10] Exhibit 6 y 7 del recurso de Apelación, págs. 43-66.

[11] Según esta doctrina, los planteamientos que han sido objeto de *adjudicación* por el foro de instancia y/o por este Tribunal **no pueden reexaminarse**. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la "ley del caso", las determinaciones hechas por un tribunal apelativo en todas las cuestiones consideradas y decididas por él, **generalmente obligan tanto al Tribunal de Primera Instancia como al foro apelativo si el caso es devuelto a cualquiera de ellos para su futura atención**. *Mgmt. Adm. Serv, Corp. v ELA*, 152 DPR 599, 606-607(2000).

[12] Exhibit 3 del recurso de Apelación, págs. 9-23.

[13] Exhibit 4 del recurso de Apelación, págs. 24-36.

[14] Exhibit 5 del recurso de Apelación, págs. 37-46.

[15] Exhibit 6 y 7 del recurso de Apelación, págs. 46-47.

En desacuerdo, el 1 de septiembre de 2023, la parte apelante presentó este recurso y le imputó al foro primario la comisión de los siguientes errores:

Primer Señalamiento de Error: Erró el TPI al no posponer la disposición de las Sentencias Sumarias presentadas por las dos (2) co-demandadas.

Segundo Señalamiento de Error: Erró el TPI al resolver el caso mediante Sentencia Sumaria sin diferenciar entre una Asociación, llamada "Asociación de Suscripción Conjunta De Seguro De Responsabilidad Obligatorio" y una Corporación (#18250, llamada "Asociación de Suscripción Conjunta de Seguro de Responsabilidad Obligatorio".

Tercer Señalamiento de Error: Erró el TPI al entender que podía dictar Sentencia Sumaria sobre una reclamación de años posteriores al caso presentado en 2018.

Cuarto Señalamiento de Error: Se quebrantó el debido procedimiento de ley, al dictar la Sentencia Sumaria en favor de los demandados sin permitirle a la parte demandante descubrimiento de prueba y privándoles de su día en corte.

Las partes apeladas presentaron su *"Alegato en Oposición a Escrito de Apelación"* el 10 de octubre de 2023. Con el beneficio de la comparecencia de las partes, a la luz del derecho aplicable, resolvemos.

**II**

*-A-*

La Regla 10 de Procedimiento Civil, *supra,* permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas siendo: **(1) una moción de desestimación**; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1; *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043,1065 (2020). No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que

entienda que tiene derecho y que la regla contempla. 32 LPRA Ap. V, R. 10.7.

Por su parte, la Regla 10.2 de las de Procedimiento Civil, *supra*, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2 (5). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra*, pág. 1066.

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 84 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra*, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. V. Jta. Dir. Firstbank*, 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre*, 211 DPR 579,614-615 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra,* págs. 400-401.

*-B-*

La Ley Núm. 253-1995, 26 LPRA sec. 8051, según enmendada, también conocida como la *"Ley del Seguro de Responsabilidad Obligatorio para Vehículos de Motor"*, requiere que todo vehículo de motor en las vías públicas de Puerto Rico esté asegurado con una cubierta de responsabilidad pública. Dicha cubierta responde por los daños ocasionados a otros vehículos en medio de accidentes de tránsito. En virtud de esta Ley, se creó la Asociación de Suscripción Conjunta (ASC) como ente que ofrece y administra el seguro de responsabilidad obligatoria (SRO).

Esta asociación se compone de "aseguradores privados" conforme los define la propia ley y a quienes la Ley [N]úm.253-1995 les impone el deber de proveer cada cubierta del SRO. Los aseguradores privados que se ajustan a los parámetros de subscripción que la ley establece, pasan ineludiblemente a ser parte

de la ASC. De manera que, conforme al artículo 6 de la precitada Ley [N]úm. 253-1995, la ASC es una entidad compuesta por aseguradores privados autorizados a ejercer el negocio de seguros en Puerto Rico, cuya función es proveer y administrar el SRO. Artículo 6 de la Ley Núm. 253-1995, 26 LPRA sec. 8055. *Alonzo Reyes v. ASC*, 185 DPR 861, 869 (2012). El propósito de esta norma es proveer un seguro de responsabilidad pública a aquellos conductores que la seleccionen en el Formulario de Selección y a los solicitantes de dicho seguro rechazados por un asegurador privado que no forma parte del Formulario de Selección. *Íd.* La ASC estará integrada por todos los aseguradores privados que cumplan con el requisito de suscripción de la ley. *OCS v. ASC*, 184 DPR 515, 525 (2012).

La Ley Núm. 253-1995 define el seguro de responsabilidad obligatorio como "el seguro que responde por los daños causados a vehículos de motor de terceros como resultado de un accidente de tránsito, por los cuales es legalmente responsable el dueño del vehículo asegurado por este seguro, y a causa de cuyo uso se ocasionan dichos daños, conforme al sistema para la determinación inicial de responsabilidad creado al amparo de este capítulo". 26 LPRA sec. 8052, 3(m). Por otro lado, en el artículo 4 se establecen las "Disposiciones Generales del Seguro de Responsabilidad Obligatorio". 26 LPRA sec. 8053. En especial, destacamos los siguientes incisos:

> (a) **El Formulario de Selección será el mecanismo a utilizarse <u>para que el consumidor ejerza su derecho a elegir la aseguradora de su preferencia</u>**. El Comisionado establecerá lo concerniente al contenido de dicho formulario el cual deberá incluir información básica de identificación del vehículo del asegurado como el número de tablilla, así como el detalle de la cubierta uniforme y sus límites. El orden de los aseguradores en dicho formulario se determinará al azar. Los aseguradores privados contemplados en el Formulario no podrán rechazar a ningún solicitante que lo escoja, ni podrán

retirarse de ser una alternativa de selección hasta tanto culmine la vigencia de dicho Formulario.

[…]

(d) **Todo asegurador que desee ofrecer o proveer el seguro de responsabilidad obligatorio deberá notificar por escrito al Comisionado su determinación de participar en el Formulario de Selección, en o antes de noventa (90) días previos a la vigencia de dicho Formulario**. **El Formulario será autorizado por el Comisionado, no más tarde de sesenta (60) días previo a su vigencia y remitirá el mismo al Secretario del Departamento de Transportación y Obras Públicas para que lo remita a las entidades autorizadas, junto con los marbetes**.

(Énfasis suplido).

También señalamos el artículo 6 (e), donde se enfatiza:

**(e) Las entidades autorizadas para el cobro del seguro de responsabilidad obligatorio, retendrán el cinco por ciento (5%) del importe de las primas directamente cobradas y recaudadas por éstas, para cada asegurador privado, y la Asociación de Suscripción Conjunta, por concepto del servicio de cobro de las primas de conformidad al Artículo 7(b) (1**). Las primas que sean transferidas a la Asociación de Suscripción Conjunta o debitadas por ésta de las cuentas de las entidades autorizadas tendrán ya descontado el cinco por ciento (5%) de dicho cargo por servicio. La Asociación de Suscripción Conjunta remitirá en un término no mayor de cinco (5) días laborales, las cuantías por concepto de primas que le correspondan a las aseguradoras privadas incluidas en el Formulario de Selección que suscriban el seguro de responsabilidad obligatorio. **Para que comience a trascurrir el término de cinco (5) días laborables aquí dispuestos deberán concurrir las siguientes circunstancias: (a) que la Asociación de Suscripción Conjunta haya recibido las primas del seguro de responsabilidad obligatorio por parte de la entidad autorizada para el cobro de la prima; (b) que la Asociación de Suscripción Conjunta haya recibido la información para poder identificar el vehículo asegurado; y (c) que la Asociación de Suscripción Conjunta haya recibido la información, ya sea mediante copia o formato electrónico del Formulario de Selección, para poder identificar el asegurador seleccionado.**

26 LPA sec. 8056(6)(e).(Énfasis suplido).

Por otro lado, la Ley Núm. 253-1995 sufrió una enmienda en cuanto a las definiciones contenidas. La Ley Núm. 201-2009 fue promulgada para enmendar varios artículos de la Ley Núm. 253-2009. En lo pertinente, se enmendó el artículo 3 (c) para que lea como sigue:

**(c) Asociación de Suscripción Conjunta**. — Significa la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, **asociación privada a cargo de administrar el seguro de responsabilidad obligatorio que se adquiere mediante el pago de los derechos de expedición o renovación de licencia de un vehículo de motor, creada por esta Ley.** Ofrecerá el seguro de responsabilidad obligatorio a aquellos dueños de vehículos de motor que la seleccionen en el Formulario de Selección al momento de adquirir por primera vez o de renovar la licencia del vehículo o a los solicitantes de dicho seguro rechazados por los aseguradores privados.

El carácter **privado** de la ASC fue incorporado a la Ley Núm. 253-1995 a través de la mencionada enmienda como resultado jurisprudencial en el Primer Circuito del Tribunal de Apelaciones de los Estados Unidos, donde se resolvió en el caso *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza,* 479 F.3d.63 (1er Cir.2007) que la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio opera como una empresa privada y es una empresa privada.[16]

Como colorario de lo anterior, se puede observar que "[s]obre la inclusión de este cambio en la ley, resulta interesante la razón por la cual el legislador efectuó tal variación en el texto. Así, surge de la *Exposición de Motivos* de la Ley 201-2009 lo siguiente:

"El 1ro de marzo de 2007, el Primer Circuito del Tribunal de Apelaciones de los Estados Unidos resolvió en el caso *Asociación de Suscripción Conjunta del Seguro Obligatorio v. Flores Galarza, supra,* (citas omitidas) que la ASC opera como *una empresa privada y **es una empresa privada**, y no pública o cuasi pública como se trató de argumentar .... **Ante tal hecho jurídico, resulta imperativo enmendar las disposiciones de la Ley Núm. 253 que incidan sobre dicha determinación judicial"*. [...] [L]o cierto es que el debate en torno a la aprobación de la Ley Núm. 253-1995 que se llevó a cabo en el Senado de Puerto Rico, cuerpo originador del

---

[16] Exhibit 3 del recurso de Apelación, págs. 16-23.

proyecto de ley, confirma que esa siempre fue la intención del legislador". *Alonzo Reyes v. ASC,* 185 DPR 861, 871-872 (2012). (Énfasis suplido).

Por lo que posteriormente, mediante enmienda la ASC adquirió este carácter como asociación privada y entonces cumplimentó su certificado de incorporación en el 2008.[17] Es preciso señalar que la personalidad jurídica que la ASC ha ostentado, ha continuado siendo la misma ininterrumpidamente desde su creación legislativa en el 1995 hasta el presente. Dicha clarificación responde a la enmienda acaecida por disposición jurisprudencial y que se dispone en la *Exposición de Motivos* de la Ley Núm. 201-2009

### -C-

El Artículo 1204 del Código Civil de Puerto Rico de 1930, 32 LPRA sec. 3343,[18] codificó la doctrina de cosa juzgada, o *res judicata,* en nuestra jurisdicción. En lo pertinente, el referido Artículo dispone lo siguiente:

> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. [...].

Aún con la adopción del nuevo Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.*, la vigencia de la doctrina continúa a través de nuestra jurisprudencia. La doctrina de cosa juzgada está fundada en consideraciones de orden público y necesidad, pues, se busca, en el interés del Estado, que se pongan fin a los litigios, que no se eternicen las cuestiones judiciales, dar la debida dignidad a los fallos de los tribunales y que no se someta en dos ocasiones a un ciudadano a las molestias de litigar la misma causa. *Pérez v. Bauzá,*

---

[17] Exhibit 9 del recurso de Apelación, págs. 9-23.

[18] Hacemos constar que dicho Código Civil ha sido derogado por la Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5311 *et seq.*

83 DPR 220, 225 (1961). Además, la doctrina "persigue poner fin a los litigios luego de que los tribunales los adjudiquen de forma definitiva y, de este modo, garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial" y así evitar gastos adicionales al Estado y a los litigantes. *Pérez v. Bauzá, supra*, pág. 225. De esta manera se promueve la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes entre sí. *Rodríguez v. Colberg*, 131 DPR 212, 218 (1992).

**"Una vez aplicada la doctrina precitada, el efecto de ésta es que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, <u>las cuestiones ya litigadas y adjudicadas y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior</u>"**. *Pagán v. UPR*, 107 DPR 720, 732-733 (1978). El Tribunal Supremo de Puerto Rico ha sostenido que el efecto de cosa juzgada en una sentencia judicial permanece sobre pleitos posteriores, aunque la misma sea errónea. *Ramos González v. Medina*, 121 DPR 312, 339 (1988). (Énfasis suplido).

Para la presunción de cosa juzgada se requiere que concurra la más perfecta identidad de cosas, causas, partes y la calidad en que lo fueron en el caso resuelto por la sentencia y aquel en que dicha defensa afirmativa sea invocada. *Ortiz Matías v. Mora Development*, 187 DPR 649, 655 (2013); *Rodríguez v. Colberg, supra*, pág. 219. El primer (1) requisito de identidad de cosas exige que el primer y segundo pleito versen sobre el mismo objeto o materia sobre la cual se ejercita la acción. *Presidential v. Transcaribe*, 186 DPR 263,274 (2012); *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753, 764 (1981). Para determinar si existe identidad de cosas, es si un juez se expone a contradecir una determinación anterior.

*Presidential v. Transcaribe, supra,* pág. 275. El segundo (2) criterio en cuanto al requisito de identidad de causas, se examina el origen o motivo de las acciones planteadas y resueltas. Esta identidad existe cuando "los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada". *Id.* pág. 275. Para ello es necesario cuestionar si ambas reclamaciones se basan en el mismo núcleo de hechos o misma transacción. Tercero (3) y último, la identidad de las personas y la calidad en que lo fueron se constituye cuando **"los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas"**. 32 LPRA sec. 3343, *supra.* (Énfasis suplido).

A su vez, esta doctrina tiene el propósito de impartir finalidad a los dictámenes judiciales. *Casco Sales v. Mun. de Barranquitas,* 172 DPR 825, 833 (2007). Sin embargo, no procede aplicar de forma inflexible la doctrina de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. *Parrilla v. Rodríguez, supra,* pág. 270; *Pérez v. Bauzá, supra,* pág. 226. A tenor con lo anterior, también se desprende de esta doctrina, la modalidad del impedimento colateral por sentencia. En esencia, dicho precepto legal es una matización de la doctrina de cosa juzgada, la cual persigue el fin de los litigios y garantiza la certidumbre y seguridad de los derechos declarados. *Universal Ins. Co. v. Estado Libre Asociado de Puerto Rico,* 211 DPR 455, 469 (2023).

El Tribunal Supremo de Puerto Rico ha reiterado que [...] "'en numerosas ocasiones el impedimento colateral por sentencia "impide que en un pleito posterior se reliti guen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior,

independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes". Para que aplique, es necesario que concurran los siguientes requisitos: (1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo". *Universal Ins. Co. v. Estado Libre Asociado de Puerto Rico, supra*, pág. 470. No obstante, "a diferencia de la doctrina de cosa juzgada, **la aplicación de la figura de impedimento colateral por sentencia <u>no exige la identidad de causas</u>. Esto es, que la razón de pedir, plasmada en la demanda, sea la misma en ambos litigios**". *PR Wire Prod. v. C. Crespo & Assoc.,* 175 DPR 139, 152 (2008). (Énfasis suplido).

### -D-

Las Reglas de Evidencia, 32 LPRA Ap. V, abarcan el conocimiento judicial sobre los hechos adjudicativos. Los hechos adjudicativos son aquellos que están en controversia de acuerdo con las alegaciones de las partes y del derecho sustantivo que rige el asunto. *Perez v. Mun. de Lares*, 155 DPR 697, 703 (2001). En lo pertinente, la Regla 201 de Evidencia, *supra*, dispone que

> **Regla 201. Conocimiento judicial de hechos adjudicativos**
> (A) Esta Regla aplica solamente al conocimiento judicial de hechos adjudicativos.
> (B) El Tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque:
> > **(1) es de conocimiento general dentro de la jurisdicción territorial del Tribunal, o**
> > **(2) es susceptible de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada.**
> **(C) El Tribunal podrá tomar conocimiento judicial a iniciativa propia o a solicitud de parte. Si es a solicitud de parte y ésta provee información suficiente para ello, el Tribunal tomará conocimiento judicial.**
> (D) Las partes tendrán derecho a ser oídas en torno a si procede tomar conocimiento judicial. De no haber sido notificada oportunamente por el Tribunal o por la parte promovente, la parte afectada podrá solicitar la

oportunidad de ser oída luego de que se haya tomado conocimiento judicial.
**(E) El Tribunal podrá tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la apelativa**.

[...]

32 LPRA Ap. V, R 201.

Así pues, "[e]sta regla permite que se tome conocimiento judicial de dichos hechos, cuando se establece que éstos son de conocimiento general dentro de la jurisdicción territorial o cuando éstos son susceptibles de determinación inmediata y exacta a través de una fuente, cuya exactitud no puede ser cuestionada. En relación con este segundo criterio, se requiere que los hechos adjudicativos satisfagan un elemento de indisputabilidad. Esto es, que sean de fácil y precisa corroboración". *Pérez v. Mun. de Lare*s, *supra*, pág. 704 – 05.

### -*E*-

La Regla 44.1 (d) de las de Procedimiento Civil, *supra*, regula la concesión de costas y honorarios en un pleito. Veamos:

> **En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad**, **el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.** En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, **el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado**.
> 32 LPRA Ap. V, R.44.1 (d). *González Ramos v. Pacheco Romero*, 209 DPR 138, 139 (2022). (Énfasis suplido)

El Tribunal Supremo de Puerto Rico ha manifestado que "la temeridad es aquella conducta que promueve un pleito que se pudo obviar, lo prolonga innecesariamente o que obliga a una parte a involucrarse en trámites evitables". *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253 276 (2021); *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 925 (2012).

Por otro lado, la Regla 85 de nuestro reglamento, 4 LPRA Ap. XXII-B, R. 85, permite imponer horarios por temeridad a aquellos litigantes perdidosos que hayan incurrido en conducta contumaz, frívola y temeraria.

**Regla 85 *Costas y sanciones***

(A) Las costas se concederán a favor de la parte que prevalezca, excepto en aquellos casos en que se disponga lo contrario por ley.

**(B) Si el Tribunal de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado o abogadas las costas, los gastos, los honorarios de abogado y la sanción económica que estime apropiada, la cual deberá reflejar, en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Apelaciones. El tribunal impondrá iguales medidas a la parte promovida o a su abogado cuando determine que la contestación al recurso es frívola o que ha sido presentada para dilatar los procedimientos.**

(C) El Tribunal de Apelaciones impondrá costas y sanciones económicas en todo caso y en cualquier etapa a una parte, a su abogado o a su abogada por la interposición de recursos frívolos o por conducta constitutiva de demora, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia.

(D) A discreción del Tribunal de Apelaciones, la sanción económica podrá ser a favor del Estado, de cualquier parte o de su abogado o abogada.

(A) Los dictámenes del Tribunal de Apelaciones bajo esta regla, deberán ser debidamente fundamentados. (Énfasis suplido).

**III**

La parte apelante, trae ante nuestra consideración cuatro (4) señalamientos de error. Por estar intrínsecamente atados, procederemos a discutir los errores en conjunto.

Primeramente, señala la parte apelante que incidió el Tribunal de Primera Instancia al no posponer la disposición de las Sentencias Sumarias presentadas por ASC y KPMG.

Es preciso destacar que, en su recurso, PSI reiteradamente hace alusión a la presentación de sentencias sumarias al amparo de la Regla 36 de Procedimiento Civil, *supra*, por parte de ASC y KPMG, respectivamente. **Sin embargo, es necesario aclarar que ambas partes apeladas presentaron mociones al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, ante el Tribunal de Primera Instancia.** Es necesario puntualizar tan precisa diferencia, toda vez que las consecuencias prácticas y procesales que emanan de ambas reglas son, a todas luces distintas.

La Regla 10.2 de Procedimiento Civil, *supra*, permite a un demandado solicitar al tribunal que desestime la demanda antes de contestarla "**cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará**". *Conde Cruz v. Resto Rodríguez, supra*, pág. 1065; *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001). Por su parte, sabido es que la ***sentencia sumaria*** es un mecanismo procesal que permite dictar sentencia sobre la totalidad de una reclamación o controversia **sin la necesidad de celebrar vista en su fondo**. Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36. *Meléndez Gonzalez v. M. Cuevas*, 193 DPR 100, 135 (2015). Ésta procede cuando de los documentos que acompañan la solicitud y los que obran en el expediente no surge controversia real y sustancial sobre hecho material alguno, y únicamente resta aplicar el derecho. *Íd.*

Ahora bien, PSI realiza una exposición de referencias a escritos anteriores y conclusiones de derecho para poder sostener la discusión de los primeros señalamientos de error. Sin embargo, dichos argumentos no nos convencen. El Tribunal de Primera Instancia resolvió en su *Sentencia*, que al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, procedía dictar la desestimación del litigio. Toda vez que, aun interpretando las alegaciones de la forma más favorable para PSI, el Juzgador del derecho concluyó que PSI

no tenía derecho a la concesión de un remedio **por ser cosa juzgada en un pleito anterior, es decir, en el caso de *Primas y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio*, SJ2018CV02981**. A tenor con lo anterior, la demanda SJ2018CV02981 advino final y firme. Es por lo que el Foro a *quo* se circunscribió a aplicar la "doctrina de la Ley del caso" que impartió finalidad en el caso anterior por esta ser final y firme.

Por otro lado, en el segundo (2) señalamiento de error, PSI sostiene que erró el foro primario al resolver el caso mediante sentencia sumaria sin diferenciar entre una Asociación, llamada "Asociación de Suscripción Conjunta De Seguro De Responsabilidad Obligatorio" y una Corporación (#18250, llamada "Asociación de Suscripción Conjunta de Seguro de Responsabilidad Obligatorio". *No le asiste la razón.*

Para la más cabal comprensión de este asunto, es necesario exponer un breve extracto de las Sentencias que han sido mencionadas con anterioridad y que nos guían hacia la decisión correcta. Como hemos reseñado, PSI radicó una demanda en el caso de *Primas y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio,* SJ2018CV02981 donde realizó las siguientes alegaciones en cuanto a ASC:

> **IDENTIIFICACION [sic] DE LA PARTE DEMANDADA**
> 2. La parte demandada, Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, de ahora en adelante la ASC, por **es una es una corporación,** organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con el único propósito de proveer y administrar el Seguro Compulsorio en Puerto Rico. Siendo su dirección física Las Vistas Shopping (Village) Center, Local #4 Ave. Felisa Rincón de Gautier, Carretera 119, San Juan PR 00926 y dirección postal PO BOX 11457, San Juan PR 00910-2557. (Énfasis suplido).
>
> 3. La parte demandante, desde el año 1997 hasta el presente, se encarga de gestionar pólizas de seguros para automóviles, incluyendo la cubierta del seguro obligatorio con la demandada ASC.

4. Como parte de sus gestiones, la parte demandante ofrece la póliza de seguro obligatorio a sus clientes, con la demandada ASC, la cual recibe pago y emite endoso.

5. Que ha pesar de que la demandada ASC ha aceptado pagos, y emitidos endosos, al presente la parte demandante no ha recibido su pago de comisión por la venta, pese a que la ha reclamado año tras año.

[…]

10. La comisión incluida en el costo de adquisición es la compensación que un asegurador pagará a un agente, nombrado por este, por gestionarle un seguro que este haya obtenido y colocado con aquel; o sea, es el pago por el esfuerzo realizado en la venta de u seguro.

[…]

13. La parte demandante lleva años pagando a la ASC, por pólizas de responsabilidad obligatoria para sus clientes privados y comerciales, siendo estos pagos aceptados, entrando en vigor sus cubiertas sin que al presente hayan sido devueltos los pagos o denegada la cobertura, por lo que habiéndose formalizado contrato entre las partes, la demandada tiene que pagar comisión correspondiente.

[…]

17. Dado lo antes expresamos solicitamos respetuosamente a este Honorable Tribunal emita Sentencia Declaratoria, **sobre el derecho de la parte demandante a cobrar comisión por las pólizas pagadas y aceptadas por la demandada ASC**. (Énfasis suplido).

Luego de haber sufrido una desestimación con perjuicio al amparo de la Regla 36, de Procedimiento Civil, *supra*, en el precitado caso SJ2018CV02981, en el año 2021 PSI radicó una nueva reclamación contra ASC, SJ2021CV08457 donde realizó las siguientes alegaciones similares y pertinentes a la controversia que nos atañe:

**IDENTIFICACION DE LA PARTE DEMANDADA ASC
(Corporación #182501)**

2. La parte demandada, **Corporación Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, Inc.**, es una **es una corporación**, **creada el 14 de julio de 2008**, organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, corporación número **182501**, creada con el **único propósito** de proveer "cubierta del **seguro obligatorio** de responsabilidad pública a terceros por accidentes de vehículos", conforme el "**Certificado de Incorporación**" presentado ante el Departamento de Estado del Estado Libre Asociado de Puerto Rico.

[…]

4. La Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio**, Inc.**, corporación **182501,** es una es una corporación **privada**.

[…]

### IDENTIFICACION DE LA PARTE DEMANDADA
### (KPMG Corporación 366517)

13. La co-demandada, KPMG LLC, es una **es una corporación**, **creada el 23 de diciembre de 2015**, organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, corporación número **366517**, conforme el "**Certificado de Incorporación**" presentado ante el Departamento de Estado del Estado Libre Asociado de Puerto Rico.

14. Se desconoce la personalidad jurídica de KPMG LLC, antes de su incorporación oficial en Puerto Rico, pero para los efectos de esta demanda, la codemandada KPMC LLC debe ser interpretada como la corporación 366517 y cualquier otra demandada que haya operado bajo ese nombre, lo cual se descubrirá en el procedimiento de descubrimiento de prueba y se solicitará la correspondiente enmienda a la presente demanda.

[…]

### ASC Entidad jurídica vs. personalidad jurídica

18. El Código Civil de PR define quienes son **personas jurídicas**. Tanto la Asociación (ASC) **creada por la ley** 253 de 1995 como **la Corporación (182501) creada el 14 de julio de 2008** ASOCIACION DE SUSCRIPCION CONJUNTA (ASC) DEL SEGURO DE ESPONSABILIDAD OBLIGATORIO **INC.**, aunque son **personas jurídicas distintas**, ambas **tienen personalidad jurídica**, capaz de tener derechos y obligaciones, además, tienen legitimación para ser demandados y demandar.

19. Veamos sin son la misma entidad, **jurídicamente hablando**.

#### *Continuación de la Misma Entidad (Successor)*

20. Primeramente, revisemos como los tribunales han evaluado una **continuación de entidades jurídicas y/o patrono sucesor** y podremos concluir que la Asociación **no corporación**, (ASC) **creada por ley** de 1995 y la corporación **182501**, ASOCIACION DE SUSCRIPCION CONJUNTA (ASC) DEL SEGURO DE RESPONSABILIDAD OBLIGATORIO **INC.** 2008) son dos entidades diferentes e independientes.

[…]

24. KPMG LLG, es la firma que prepara o preparaba los "**estados financieros**" **de la Corporación** Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio**, Inc.**, **desde su creación en 2008**.

25. **Hasta el 2019**, KPMG LLC ha presentado al Departamento de Estado de Puerto Rico los estados financieros de la Asociación De Suscripción Conjunta Del Seguro de responsabilidad Obligatorio.

26. En ninguno de los estados financieros en que KPMG LLC ha presentado los Informes Financieros de la Asociación De Suscripción Conjunta Del Seguro de Responsabilidad Obligatorio, ha establecido que dicha entidad "**es una corporación**", estados que presenta sin las siglas Inc. o Corp.

[…]

54. La Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio (corporación **182501**) aceptó la colocación de pólizas sobre Seguro Compulsorio colocadas por la parte aquí demandante.

55. Ni la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio (**no corporación y creada al amparo de la Ley 253 de 1995**) ni la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio (corporación **182501**) pagó comisiones a la demandante.

56. El presente caso versa sobre la reclamación del **pago de comisiones** y sobre **daños y perjuicios**.

[…]

84. La parte demandante (PSI), **desde el año 1997** hasta el presente, se encarga de gestionar pólizas de seguros para automóviles, incluyendo la cubierta del seguro obligatorio con la ASC, como Asociación (**no incorporada y creada a través de la Ley 253-1995**) así como a través de la ASC, **Inc.** (corporación #182501) desde 2008 en adelante.

[…]

91. La comisión incluida en el costo de adquisición es **la compensación que un asegurador pagará a un agente**, nombrado por este, por gestionarle un seguro que este haya obtenido y colocado con aquel; o sea, es el pago por el esfuerzo realizado en la venta de u seguro.

[…]

96. La **Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio (no corporación y creada al amparo de la Ley 253-1995)** fue creada mediante la Ley 253-1995 como una entidad privada, con fines de lucro y con los poderes generales de una corporación, tales como el poder de demandar y ser demandada. 26 LPRA Sec. 8055(A) y Sec. 2905. 3.10

[…]

114. La aquí demandante presentó demanda contra la ASC (**no corporación** bajo el caso SJ2018CV02981 (603) sobre Sentencia Declaratoria.

[…]

120. La ASC (no corporación) obtuvo Sentencia en el caso SJ2018CV02981 (603) sobre Sentencia Declaratoria **ocultando información** a PSI y fundamentando su caso en un "alegado" informe

privilegiado que preparó la propia demandada y asumiendo una posición de no pagar comisiones en contra de toda la reglamentación clara del Código de Seguros y de Distribución del dólar prima establecida por la Oficina del Comisionado de Seguros.

121. El referido caso, aparte de que entendemos se obtuvo la Sentencia mediante fraude al Tribunal y se pretende presentar una anulación de la referida Sentencia, no se presenta contra la ASC (no corporación) se presenta contra la ASC (corporación 182501) hacho por el cual, **teniendo personalidades jurídicas diferentes**, no proceden planteamientos de cosa juzgada ni sus modalidades.

[…]

135. La parte aquí demandada (corporación 182501) incumplió su deber contractual de pagar comisiones a la demandante, **conforme mandatado en el Código de Seguros de Puerto Rico** y adeuda a la parte demandante la suma de **$6,038,982.00** por concepto de comisiones retenidas y no pagadas **derivadas de la colocación y aceptación de pólizas de seguro Obligatorio**.

136. La parte aquí demandada (corporación 182501) ha causado daños contractuales y por mora a la parte demandante los que se estiman en **$18,000,000.00** y se reclaman en esta demanda.

### DAÑOS CAUSADOS POR KPMG

137. Por la negligencia causada por KPMG, al no aclarar y **encubrir la verdadera personalidad jurídica de la ASC**, se causaron daños a la parte demandante, ya que ha motivado múltiples gestiones para tratar de cobrar las referidas comisiones adeudadas e impidió que se pudieran formular alegaciones adicionales ante los tribunales de justicia de Puerto Rico, daños que se estiman en **$1,000,000.00**.

138. Que las actuaciones de KPMG han sido antiéticas y deben ser referidas a las autoridades correspondientes ante un posible fraude contributivo al haber mezclado dos entidades con personalidad jurídica "diferente" bajo un mismo Informe Financiero, apoyando la hipótesis de ASC de que no tenían que pagar comisiones a sus agentes de seguro, incluyendo a la parte demandante.

Como se puede apreciar, PSI realiza en la nueva demanda una serie de alegaciones iguales en torno a la acumulación de ASC. En el precitado litigio, ASC tuvo que replicar una moción presentada por PSI, intitulada "*Réplica a Urgente Solicitud de Aclaración de Personalidad Jurídica de la Parte Demandada en Cumplimiento de*

*Orden*".[19]  En esta volvió a recalcar que ASC, INC. y ASC era una sola entidad jurídica y que no existía tal dicotomía como PSI intentaba alegar. En adición, sostuvo que desde la radicación del primer litigio PSI tuvo amplio conocimiento sobre la personalidad jurídica de ASC. Adviértase que a pesar de haber tenido conocimiento de que la apelada KPMG realizaba la contabilidad de ASC desde el 2008, ahora en la acumulación de la presente demanda, le realiza una serie de imputaciones de fraude y de encubrimiento.

Por otro lado, **destacamos que la demanda presentada por PSI cuenta con 137 alegaciones, de las cuales, a partir de la alegación número 18 hasta la alegación número 55, PSI se encargó de incluir fundamentos sobre la "aparente dicotomía de identidad" sobre la ASC**.[20] De igual forma, plasmó en su demanda múltiples argumentaciones sobre la Ley General de Corporaciones, 14 LPRA sec. 2601; la Ley de Asociaciones de Empleados del Estado Libre Asociado de Puerto Rico de 2013, 3 LPRA sec. 9001; el Código de Seguros, 26 LPRA sec. 9001., entre otras alegaciones que no atienden la médula de esta controversia.

Como previamente destacamos, el foro primario tuvo ante su consideración dos (2) mociones de desestimación al amparo de la Regla 10.2 (5), de Procedimiento Civil, *supra*. Por otro lado, y según surge del expediente de autos y tomamos conocimiento judicial, que previamente fue litigado un caso relacionado al de marras. Surge de la *Sentencia* del foro apelado:

> El tribunal toma conocimiento que según surge de la exposición de motivos de la Ley Núm. 201-2009, surge que la enmienda se hizo en atención a que el 1ro de marzo de 2007, el Primer Circuito del Tribunal de Apelaciones de los Estados Unidos resolvió en el caso *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza*, 479 F.3d.63 (1er Cir.2007) que **la Asociación de**

---

[19] Apéndice del Alegato en Oposición de ASC, págs. 0049-0073.
[20] Exhibit 8 del recurso de Apelación, págs. 49-78.

**Suscripción Conjunta del Seguro de Responsabilidad Obligatorio opera como una empresa privada y es una empresa privada. Posteriormente a esa decisión, <u>se incorpora ASC, Inc. en el Departamento de Estado de Puerto Rico y lo que era la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio continuó operando como la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, Inc. Por tanto, ASC, Inc. es la misma entidad jurídica demandada en el caso SJ2018CV02981</u>**.[21]
(Énfasis suplido).

Es decir, el Tribunal de Primera Instancia justipreció que en el asunto *Primas y Seguros, Inc. v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio,* SJ2018CV02981, se había llevado a cabo un proceso contencioso sobre las mismas cosas, causas, partes y la calidad en que litigaron. El foro sentenciador pudo comparar ambas reclamaciones y aplicar la doctrina de cosa juzgada y su modalidad de impedimento colateral por sentencia.

PSI mediante este nuevo pleito, reclama controversias que fueron litigadas y desestimadas en un pleito anterior. Sostiene además que por haber acumulado a KPMG y las reclamaciones en su contra, esto impide que se configure la doctrina de cosa juzgada y el impedimento colateral por sentencia.

Toda vez que **se estableció que la ASC luego de la incorporación en el 2008, continuó operando con la misma personalidad jurídica que ostentaba desde el 1995**. Adicionalmente la necesidad de incorporar en el Departamento de Estado surgió producto de la decisión jurisprudencial y por enmienda legislativa, por lo que no alteró su personalidad jurídica. Al revisar las demandas y sentencias previamente relacionadas, tomamos conocimiento judicial de las controversias previamente litigadas, y lo que fue adjudicado tanto en el pleito que nos ocupa, como el caso anterior SJ2018CV02981, por lo que concluimos que

---

[21] Apéndice I de Recurso de Apelación, págs. 1-8.

el Tribunal de Primera Instancia adjudicó correctamente al desestimar lo que PSI intenta relitigar en el asunto que nos ocupa, siendo la misma entidad, ASC, contra quien PSI litigó el pleito anteriormente.

Por otro lado, en el tercer (3) señalamiento de error, PSI arguye que el foro apelado incidió al entender que podía dictar sentencia sumaria sobre una reclamación de años posteriores al caso presentado en 2018.

Reiteramos que el Tribunal de Primera Instancia tuvo ante su consideración dos (2) mociones de desestimación al amparo de la Regla 10.2 (5), de Procedimiento Civil, *supra*, PSI argumenta erróneamente que este litigio fue desestimado al amparo de una moción de sentencia sumaria. Ahora bien, la doctrina de cosa juzgada en su modalidad del impedimento colateral por sentencia impide que se litiguen las mismas controversias en pleitos posteriores. El efecto principal surge en pleitos posteriores cuando luego de una sentencia final y firme, una parte intenta relitigar los asuntos ya resueltos, en igualdad de condiciones sobre las mismas cosas, causas, partes y la calidad en que litigaron.

Ahora bien, para la aplicación de la doctrina de cosa juzgada se requiere la identidad de cosas, causas, personas litigantes y la calidad en que lo fueron. Primeramente, examinamos la identidad de causas y cosas. La primera y segunda *Demanda* presentada por el apelante son idénticas, con excepción de los nuevos demandados, KPMG, que PSI no acumuló en la primera demanda, a pesar de tener conocimiento de ellos; tratan exactamente sobre los mismos hechos y contienen las mismas causas de acción. Por tanto, resulta ineludible concluir que existe una identidad de causas por tratarse de hechos y fundamentos idénticos e identidad de cosas por versar sobre la misma materia y causas de acción.

Por último, debe haber identidad de las partes y la calidad en que lo fueron. Evidentemente, las partes de ambos pleitos son las mismas. La segunda *Demanda* solo añadió KPMG, la cual luego se probó que existió desde el 2008, por lo que PSI tuvo conocimiento siempre de su existencia. Ante esta situación KPMG es un causahabiente, para la aplicación de la doctrina de cosa juzgada en el requisito de identidad de partes. El Tribunal de Primera Instancia desestimó el pleito en su totalidad antes de resolver la solicitud de desestimación. Por ende, es necesario concluir que la identidad de partes y la calidad en que lo fueron persiste.

Finalmente, en el cuarto (4) señalamiento de error, PSI argumenta que se quebrantó el debido procedimiento de ley, al dictar la sentencia sumaria a favor de los demandados sin permitirle a la parte apelante descubrimiento de prueba y privándoles de su día en corte.

Señalamos nuevamente que el foro primario tuvo ante su consideración dos (2) mociones de desestimación al amparo de la Regla 10.2 (5), de Procedimiento Civil, *supra,* y que no dispuso del asunto de autos mediante una sentencia sumaria al amparo de la Regla 36 de Procedimiento Civil, *supra.* Ahora bien, tomando como ciertos todos los hechos bien alegados en la demanda, una moción al amparo de la Regla 10.2 (5), *supra,* procederá, porque como cuestión de derecho, los remedios solicitados son improcedentes. La doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia impide que se relitigue un caso que ya fue resuelto, incluyendo llevar a cabo un descubrimiento de prueba, que, como cuestión de derecho, fue realizado en el pleito anterior, donde hay identidad de cosas, causas, partes y la calidad en que litigaron. *No se cometieron los errores señalados.*

Como mencionamos anteriormente, y conforme surge de la exposición del derecho aplicable, es como parte de la doctrina de

cosa juzgada y su modalidad de impedimento colateral por sentencia, la existencia de casos previos y la claridad de la letra de la Ley Núm. 253-1995, no procede la reclamación incoada por PSI. Por todo lo antes expuesto, concluimos que el foro primario no erró al determinar que los apelantes estaban impedidos de relitigar contra ASC y KPMG nuevamente sus causas de acción.

En adición a lo anterior, tras un examen mesurado del expediente de autos, colegimos que el Tribunal de Instancia no incidió en su pronunciamiento. Al contrario, de los hechos procesales que anteceden, son indiscutibles los intentos de PSI de continuar litigando un asunto adjudicado por sentencia final y firme. Las reiteradas actuaciones de la parte apelante nos llevan a concluir que han actuado de manera temeraria y contumaz. En virtud de la Regla 85 del Reglamento del Tribunal de Apelaciones, este nos faculta para imponer sanciones en los casos en que alguna parte haya actuado de manera temeraria o frívola.

## IV

Por los fundamentos antes expuestos, *confirmamos* la determinación del Tribunal de Primera Instancia donde desestimó con perjuicio la causa de acción instada por PSI. En adición, imponemos a la parte demandante-apelante, PSI, una sanción económica por la suma de $1,500.00 a favor del Fondo Especial de la Rama, por su temeridad y contumacia al incoar este frívolo proceso apelativo.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La juez Lebrón Nieves concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones